UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Matthew Alexander Nielson; J.Z., a Minor under age 18 by his Parent and Guardian Michele Stephens; D.M., a Minor under age 18 by her Parent and Guardian Victoria Reed; and the Freedom From Religion Foundation, Inc., <br><br>　　　　　　　　Plaintiffs, <br>　　　v. <br><br>School District Five of Lexington and Richland Counties, <br><br>　　　　　　　　Defendant. | C.A. No. 3:12-cv-01427-CMC |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

_____

January 28, 2014
Columbia, SC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………….……….…....…iii

I.     INTRODUCTION…………………………………………………………...………….1

II.    ARGUMENT……………………………………………………………………...…….1

        A.  Even If The Board is Not A Deliberative Public Body For Purposes Of
            *Marsh*, Policy BE Is Constitutional Under Traditional Establishment
            Clause Tests …………………………………………………………………………1

                1.  Policy BE Does Not Coerce Students To Support Or
                    Participate in Religious Exercises……………………………….…….…….3

                2.  Policy BE Is Constitutional Under The *Lemon v. Kurtzman*
                    Test………………………………………………………………………..3

                      a.  Policy BE Has A Secular Purpose……………………………………...3

                      b.  The Primary Effect Of Policy BE Is Not To Advance
                          Religion……………………………………………………………….…5

                      c.  Policy BE Does Not Create Excessive Entanglement
                          Between Government and Religion…………………………………….6

                3.  Policy BE Is Constitutional Using the Endorsement Test…………………….8

III.   CONCLUSION…………………………………………………………………….…..9

# TABLE OF AUTHORITIES

**Cases**

Agostini v. Felton,
   521 U.S. 203, 117 S.Ct. 1997 (1997)……………………………………………………..6
Am. Civil Liberties Union of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.,
   84 F.3d 1471 (3d Cir.1996)................................................................................... 2, 8
Barghout v. Bureau of Kosher Meat and Food Control,
   66 F.3d 1337 (4th Cir.1995) ...................................................................................... 5
Bogen v. Doty,
   598 F.2d 1110 (8th Cir.1979) .................................................................................... 4
Coles ex rel Coles v. Cleveland Bd. Of Educ.,
   171 F.3d 369 (6th Cir. 1999) ..................................................................................... 8
County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chap't.,
   492 U.S. 573, 109 S.Ct. 3086 ................................................................................... 2
Doe v. Indian River Sch. Dist.,
   653 F.3d 256 (3d Cir. 2011).............................................................................. 2, 7, 8
Engel v. Vitale,
   370 U.S. 421, 82 S.Ct. 1261 (1962).......................................................................... 7
Freethought Soc. of Greater Philadelphia v. Chester Cnty.,
   334 F.3d 247 (3d Cir.2003)....................................................................................... 8
Grand Rapids Sch. Dist. v. Ball,
   473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985)............................................. 1
Jager v. Douglas Cnty. Sch. Dist.,
   862 F.2d 824 (11th Cir. 1989) .................................................................................. 4
Koenick v. Felton,
   190 F.3d 259 (4th Cir. 1999) ................................................................................ 4, 7
Lambeth v. Bd. Of Commissioners Of Davidson Cnty., NC,
   407 F.3d 266 (4th Cir. 2005) .................................................................................... 5
Lee v. Weisman,
   505 U.S. 577, 112 S.Ct. 2649 (1992)....................................................................... 3
Lemon v. Kurtzman,
   403 U.S. 612, 91 S.Ct. 2105 (1971)……………………………………………...passim
Lynch v. Donnelly,
   465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984)..................................... 2, 4, 7
Marsa v. Wernik,
   86 N.J. 232, 430 A.2d 888, cert. denied 454 U.S. 958, 102 S.Ct. 495 (1981).......... 4
Marsh v. Chambers,
   463 U.S. 783, 103 S.Ct. 3330 (1983).................................................................... 1, 8
Mellen v. Bunting,
   327 F.3d 355 (4th Cir. 2003) ........................................................................... 2, 3, 5, 7
Mueller v. Allen,
   463 U.S. 388 –95, 103 S.Ct. 3062 (1983)................................................................. 4

N. Carolina Civil Liberties Union Legal Found. v. Constangy,
   947 F.2d 1145 (4th Cir. 1991) ................................................................................................ 6
Santa Fe Independent School District v. Doe,
   530 U.S. 290, 120 S.Ct. 2266 (2000)....................................................................................... 3
Van Orden v. Perry,
   545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005).......................................................... 2
Wallace v. Jaffree,
   472 U.S. 38, 105 S.Ct. 2479 (1985)..................................................................................... 3, 5

## Regulations

S.C. Code § 6-1-160........................................................................................................................ 1

## I.   INTRODUCTION

On November 22, 2013, the Parties filed cross Motions for Summary Judgment, the sole issue for determination being whether the Lexington-Richland County School District Five (hereinafter "the District") Board of Trustees (hereinafter "the Board") is a legislative or deliberative public body entitled to the exemption to government-endorsed prayer articulated by the United States Supreme Court in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330 (1983) and as defined in S.C. Code § 6-1-160.  Plaintiffs have stipulated that, if *Marsh* is applicable to the Board, Policy BE - School Board Meetings, as amended, (hereinafter "Policy BE") is constitutional.  If the Court determines that *Marsh* is not applicable here, the Parties have asked the Court to further review Policy BE and rule on its constitutionality based on other relevant legal precedent.

## II.   ARGUMENT

### A.   Even If The Board is Not A Deliberative Public Body For Purposes Of *Marsh*, Policy BE Is Constitutional Under Traditional Establishment Clause Tests

Plaintiffs urge this Court to evaluate Policy BE pursuant to the test articulated by the United States Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 612, 91 S.Ct. 2105 (1971), rather than the legislative prayer exemption articulated in *Marsh.*   The District asserts that, even if this Court finds *Marsh* inapplicable, Policy BE is constitutional as analyzed under traditional Establishment Clause tests, including the "*Lemon* test" and the "endorsement test."

If *Marsh* does not control here, the Court may choose to apply one or more Establishment Clause tests. In ruling on traditional school prayer cases, the Supreme Court generally has applied the *Lemon* test.  *See Grand Rapids Sch. Dist. v. Ball,* 473 U.S. 373, 383, 105 S.Ct. 3216 (1985) (noting that at that point in time, the Court "particularly relied on *Lemon*

1

in every case involving the sensitive relationship between government and religion in the education of our children"). *Lemon* sets forth a three-prong inquiry to determine whether a challenged government action is constitutional under the Establishment Clause: "(1) whether the government practice had a secular purpose; (2) whether its principal or primary effect advanced or inhibited religion; and (3) whether it created an excessive entanglement of the government with religion." 403 U.S. at 612–13, 91 S.Ct. 2105. Significantly, *Lemon* has "been the subject of critical debate in recent years." *Doe v. Indian River Sch. Dist.,* 653 F.3d 256, 282 (3d Cir. 2011) citing *Am. Civil Liberties Union of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1484 (3d Cir.1996). "[I]ts continuing vitality has been called into question by members of the Supreme Court and by its noticeable absence from the analysis in some of the Court's recent decisions." *Id.; see also Van Orden v. Perry,* 545 U.S. 677, 686, 125 S.Ct. 2854 (2005) (describing Supreme Court's reluctance to apply *Lemon*). In fact, *Doe v. Indian River*, a case on which Plaintiffs heavily rely, notes that the Court has applied *Lemon* only because it has not yet been expressly overruled. *See Indian River* at 282.

The endorsement test, advocated by Justice O'Connor in her concurrence in *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355 (1984), has emerged as an alternative to *Lemon*. The Endorsement test was adopted by a majority of the Supreme Court in *County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chap't.,* 492 U.S. 573, 109 S.Ct. 3086 (1989). Under the endorsement test, the government may not engage in any practice that suggests to the reasonable, informed observer that the government is endorsing religion. *Lynch,* 465 U.S. at 690, 104 S.Ct. 1355 (O'Connor, J., concurring); *Mellen v. Bunting*, 327 F.3d 355, 370 (4th Cir. 2003).

Further, while the *Lemon* test dominates Establishment Clause jurisprudence, the existence or absence of governmental "coercion" has emerged as a prevailing consideration in the school prayer context. In numerous cases involving school prayer, the dominant factor guiding the Court's decision was the coercive nature of the religious activity, rather than strict application of the *Lemon* test. The Supreme Court has emphasized that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman* at 505 U.S. 577, 577, 112 S.Ct. 2649 (1992). The coercion test utilized in *Lee* and subsequently in *Santa Fe Independent School District v. Doe,* 530 U.S. 290, 120 S.Ct. 2266 (2000), "looks at whether the government is coerc[ing] anyone to support or participate in religion or its exercise." *Mellen v. Bunting*, 327 F.3d 355, 370 (4th Cir. 2003). Both *Lee* and *Santa Fe* were decided by the Supreme Court without reliance on the *Lemon* test.

### 1. Policy BE Does Not Coerce Students To Support Or Participate in Religious Exercises

The District has addressed the voluntary and noncompulsory nature of student attendance at Board meetings in its prior Memorandum of Law in Support of Summary Judgment. For all of the reasons set forth therein, Policy BE does not coerce District students to support or participate in religious exercises in the form of invocations at Board meetings.

### 2. Policy BE Is Constitutional Under The *Lemon* Test

#### a. Policy BE Has A Secular Purpose

Under the first prong of *Lemon*, the Court asks "whether the government's actual purpose is to endorse or disapprove of religion." *Wallace v. Jaffree,* 472 U.S. 38, 52, 105 S.Ct. 2479 (1985). If the practice has some secular purpose, the first prong is satisfied. Courts should be "reluctan[t] to attribute unconstitutional motives to the [government], particularly when a

3

plausible secular purpose . . . may be discerned from the face of the statute," *Mueller v. Allen,* 463 U.S. 388, 394–95, 103 S.Ct. 3062 (1983); *Koenick v. Felton*, 190 F.3d 259, 265-66 (4th Cir. 1999).

The delivery of an invocation at meetings of public bodies has been recognized to have a secular purpose. *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 838 (11th Cir. 1989). These secular purposes include "solemnizing public occasions, expressing confidence in the future, and encouraging the recognition of what is worthy of appreciation in society." *Lynch* at 693, 104 S.Ct. at 1369 (O'Connor, J. concurring). *See Bogen v. Doty,* 598 F.2d 1110, 1113 (8th Cir.1979) (invocations at County Commission meetings "directed toward establishing a solemn atmosphere and serious tone for the board meetings"); *Marsa v. Wernik,* 86 N.J. 232, 248, 430 A.2d 888, 896–97 (invocations at borough council meetings serve as a "call to conscience" and create "an atmosphere conducive to open exchanges, cooperative participation, and tolerant and conscientious deliberations of all those present...."), *cert. denied,* 454 U.S. 958, 102 S.Ct. 495 (1981).

Here, Policy BE has its legitimate secular purpose articulated within the body of the policy. The Policy states, in pertinent part, that "the purposes of the public invocation are to express thankfulness for the right of self-government, solemnize the board's legislative tasks, dignify and confirm the seriousness of board meetings, encourage respect and appreciation for all board members, seek to unite and not divide the board, and to contribute to the wisdom and soundness of decisions by the board." *See* Policy BE; Gantt Affidavit ¶3. As set forth in the District's prior Memorandum, the Board has significant and important decision-making responsibilities. Pursuant to Policy BE, Board members have the opportunity to acknowledge the serious nature of the actions they will take during their upcoming meeting, as well as to prepare

for cordial and productive discussions amongst themselves regarding the weighty matters they face. This purpose, as articulated in Policy BE, satisfies the first prong of the *Lemon* test.

### b. The Primary Effect Of Policy BE Is Not To Advance Religion

Under the second prong of *Lemon*, a challenged practice should "neither advance, nor inhibit religion." The "primary effect" prong must be assessed objectively, in order to measure whether the principal effect of government action "is to suggest government preference for a particular religious view or for religion in general." *Barghout v. Bureau of Kosher Meat and Food Control,* 66 F.3d 1337, 1345 (4th Cir.1995). In other words, "[t]he effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion]." *Wallace,* 472 U.S. at 56 n. 42, 105 S.Ct. 2479 (internal quotation marks omitted); *Mellen v. Bunting*, 327 F.3d 355, 374 (4th Cir. 2003).

Though Policy BE may have the "incidental" effect of advancing religion, it nonetheless meets the second prong of *Lemon*, as the primary effect of the policy is not to endorse or advance religion. Using the "reasonably informed observer" standard, there is no evidence in this case that would lead a reasonable observer attending a Board meeting to conclude that the advancement of religion is Policy BE's primary effect. *See Lambeth v. Bd. Of Commissioners Of Davidson Cnty., NC*, 407 F.3d 266, 271 (4th Cir. 2005)(The proper analysis is . . .: whether a particular display, with religious content, would cause a reasonable observer to fairly understand it in its particular setting as impermissibly advancing or endorsing religion). Here, a reasonable observer would conclude that the purpose of a non-sectarian invocation at the beginning of a Board meeting is to open the meeting with decorum and seriousness, rather than to advance a religious viewpoint.

Plaintiffs' argument against the constitutionality of Policy BE is prefaced on their incorrect assumption that <u>any</u> government activity acknowledging the religious character of the American people must run counter to the Establishment Clause because it advances religion. That assumption does not comport with the test articulated in the second prong of *Lemon*. Government activity that does not primarily advance religion over non-religion may be constitutionally permissible – the focus is on the <u>primary effect</u> of the government's conduct. As discussed above, the purpose of Policy BE is to solemnify the Board's proceedings. Plaintiffs can point to no evidence that a reasonable observer would understand otherwise.

### c. **Policy BE Does Not Create Excessive Entanglement Between Government and Religion**

Finally, Policy BE does not create "excessive entanglement" between the government and religion. In *Agostini v. Felton*, the Supreme Court held that "[i]interaction between church and state is inevitable . . . and we have always tolerated some level of involvement between the two. Entanglement must be excessive before it runs afoul of the Establishment Clause." 521 U.S. 203, 233, 117 S.Ct. 1997 (1997). To assess the existence of entanglement, courts look to "the character and purpose of the institutions that are benefited, the nature of the aids that the State provides, and the resulting relationship between the government and religious authority." *Id*. at 206. In deciding questions of entanglement, the Supreme Court has been particularly concerned about "ongoing, day-to-day interaction between church and state." *Id.; N. Carolina Civil Liberties Union Legal Found. v. Constangy,* 947 F.2d 1145, 1152 (4th Cir. 1991).

None of these concerns are present here, as Policy BE does not create excessive entanglement between the District and religion. Policy BE permits an invocation by a Board member, delivered only to other Board members, in the form of a non-sectarian message that

6

does not proselytize or advance any one religion. Policy BE specifically states that the "invocation will be non-sectarian and will not proselytize for or advance any one, or disparage any other, faith or belief." Further, the "invocation will be offered on a voluntary basis by a member of the board, rotating from meeting to meeting, in alphabetical order, or other objective method of rotation, among all members of the board. A board member may offer a moment of silence for silent prayer or reflection in addition to or in lieu of the public invocation."

Most importantly, Policy BE does not require ongoing (or, in fact, any) interaction between the Board and churches or other religious institutions. No clergy are involved and no District funds are expended to implement Policy BE. Though the expenditure of government funds is not required to prove a violation of the third prong of *Lemon,* the involvement of government funds is a factor to consider in deciding whether entanglement exists. *See Lynch v. Donnelly,* 465 U.S., at 684, 104 S.Ct. at 1365. *See Koenick v. Felton,* 190 F.3d 259, 268 (4th Cir. 1999) (fact that challenged action did not require school district to be involved in any church-related activities or provide any funding for churches or religious events a factor in decision finding no excessive entanglement).

The District acknowledges that, in a similar school board prayer policy case, the Third Circuit Court of Appeals held in *Doe v. Indian River* that the board's recitation of invocations during its meetings evidenced excessive entanglement. To reach this conclusion, however, the Third Circuit relied heavily on case law where government officials controlled the content of "official prayers" for recitation by students. *See Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261 (1962) (striking down school prayer composed by New York state officials for daily recitation by school students); *Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003) (finding College, through state-employed chaplain, composed, mandated, and monitored a daily prayer for its

7

cadets). Similarly, in C*oles ex rel Coles v. Cleveland Bd. Of Educ.*, 171 F.3d 369 (6th Cir. 1999), the school district adopted a policy allowing the school board to "choose which member from the local religious community would give those prayers and has more recently had the school board president himself compose and deliver prayers to those in the audience," which the Sixth Circuit determined included students who were otherwise required to attend board meetings. *Id.* at 381-382.

Each of the aforementioned cases included the involvement of a captive student audience, a circumstance not present here.[1] Policy BE clarifies that "the public invocation is for the benefit of the board." The fact that an invocation under Policy BE is directed solely to and for Board members, rather than to a captive audience of students, renders this case significantly distinguishable from *Coles* and *Indian River* in that regard.

Based on the specific facts and policy at issue in this case, it is clear that there is no excessive entanglement between the District and religion, as well as no coercion. Accordingly, Policy BE satisfies all three prongs of the *Lemon* test and is constitutionally sound.

### 3.     Policy BE Is Constitutional Using the Endorsement Test

The endorsement test and the second *Lemon* prong are essentially the same. *Black Horse Pike,* 84 F.3d at 1486 ("Whether 'the endorsement test' is part of the inquiry under *Lemon* or a separate inquiry apart from it, the import of the test is the same."); *see also Freethought Soc. of Greater Philadelphia v. Chester Cnty.,* 334 F.3d 247, 269 (3d Cir.2003) (describing "effect" prong of *Lemon* as a "cognate to endorsement"); *Doe v. Indian River Sch. Dist.,* 653 F.3d 256, 282-83 (3d Cir. 2011).   For the same reasons that Policy BE satisfies the effect prong of *Lemon*, it also passes scrutiny under the endorsement test.

---

[1] The District has previously addressed the attendance of students at its Board meetings.

8

### III.     CONCLUSION

The Board is a deliberative public body to which the U.S. Supreme Court's holding in *Marsh* applies. If, however, this Court determines that *Marsh* is inapplicable, Policy BE survives constitutional scrutiny under the alternative tests used by courts to analyze government prayer cases and this Court should hold that the Board may continue to implement Policy BE.

                                 Respectfully Submitted:

By:   s/ Andrea E. White_____
        Andrea E. White (Fed. I.D. No. 5620)
        Meredith L. Seibert (Fed. I.D. No. 9919)

        DUFF, WHITE & TURNER, LLC
        3700 Forest Dr., Suite 404
        P.O. Box 1486
        Columbia, SC 29202
        Telephone:  803.790.0603
        Fax:  803.790.0605
        awhite@dwtlawfirm.com
        mseibert@dwtlawfirm.com


        s/ David L. Morrison_____
        David L. Morrison, Esq. (Fed. I.D. No. 3581)
        Kassi B. Sandifer, Esq. (Fed. I.D. No. 7439)

        MORRISON LAW FIRM, LLC
        7453 Irmo Drive, Suite B
        Columbia, SC 29212
        Telephone: 803.661.6285
        Fax:  803.661.6289
        david@dmorrison-law.com
        kassi@dmorrison-law.com

        Attorneys for Defendant

January 28, 2014
Columbia, South Carolina