IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | |
|---|---|
| Matthew Alexander Nielson; J.Z., a Minor Under age 18 by his Parent & Guardian Michelle Stephens; D.M., a Minor Under age 18 by her Parent & Guardian Victoria Reed; the Freedom From Religion Foundation, Inc., <br><br>Plaintiffs,<br><br>v.<br><br>School District Five of Lexington & Richland Counties; Board of Trustees of School District Five of Lexington and Richland Counties; Dr. Stephen W. Hefner, in his official capacity as School District Five Superintendent; and Mr. Robert Gantt in his official capacity as School District Five Board Chairperson,<br><br>Defendants, | Civil Action No. 3:12-cv-01427-CMC<br><br><br><br>SUPPLEMENTAL<br>AMICUS MEMORANDUM<br>IN SUPPORT OF CONSTITUTIONALITY<br>OF §6-1-160 |

South Carolina Attorney General Alan Wilson, as amicus curiae, submits the following supplemental memorandum on the question of whether, if the Court determines that *Marsh v. Chambers*, 463 U.S. 783 (1983) does not apply to the Richland-Lexington School District Five Board of Trustees, the Board's policy is unconstitutional under the *Lemon/Lee* test and alternative "endorsement" test as did the court in *Doe v. Indian River School District* 653 F.3d 256. *Lemon v. Kurtzman,* 403 U. S. 602, 612 (1971); *Lee v. Weisman*, 505 U.S. 577 (1992). Attorney General Wilson has previously submitted a memorandum regarding the

constitutionality of S.C. Code Ann. §6-1-160, the statute that authorizes various local governmental bodies, including school districts, to adopt policies to permit public invocations and which is the law upon which the Board of Trustees of School District Five has based its invocation policy. Policy BE, School Board Meetings, issued August 2013. Although Plaintiffs do not directly challenge the constitutionality of this statute (see note 4, pp. 9 & 10, Plaintiffs' Memorandum), they do challenge the related policy. Therefore, to the extent that the constitutionality of the statute is challenged or implicated by Plaintiffs' arguments, the Attorney General offers the following supplemental authority

Respectfully, and not in an effort to rehash *Marsh* issues as to which we have previously recommended postponement of this Court's ruling, we suggest that this Court consider deferring a decision on the application of the *Lemon / Lee* and endorsement tests, should it reach that question, as well as *Marsh,* until the Supreme Court issues an opinion in *Town of Greece v. Galloway* No. 12-696, United States Supreme Court. The attached transcript of the oral argument in *Town of Greece* shows that the Court was looking at prayer issues beyond just the applicability of *Marsh*. Although some questions were raised about the "hybrid nature" of the Town body at issue (legislative / administrative/ town meeting / zoning applications see p. 31) and *Marsh* was referenced multiple times in the argument, the focus was more on what types of prayers would be permissible in any public body rather than on drawing a line between State and Federal legislative bodies and local governmental bodies such as municipalities. Therefore, this Court should postpone its ruling until the Supreme Court issues its decision in *Town of Greece* which may apply comprehensively to many governmental bodies including the school district. At the latest a decision should be reached by the Supreme Court by the end of June.

Here are some passages of the argument demonstrating the exploration of issues both related to and beyond *Marsh*:

1.    Colloquy beginning at p. 7, l. 24 – p. 8, l. 6 :

> JUSTICE KENNEDY: The first question Justice Kagan asked you, the hypothetical about the prayer in his Court. You seemed readily to agree that that would be a First Amendment violation. Why?
>
> MR. HUNGAR: Well, perhaps I conceded too much, but I think the important distinction is between --both the judicial context and the legislative context on the one hand . . .

[p. 8, l. 14 – p. 9, l. 6]

> JUSTICE KENNEDY: Well, what's --what's the justification for the distinction?
>
> MR. HUNGAR: It's a question of what the Establishment Clause has understood, both at the time and throughout history, to forbid and not to forbid. The judiciary is different than a legislature. Legislatures can be partisan, the judiciary should not be. People are compelled to testify under oath.
>
> JUSTICE SCALIA: But you --but you –you had no problem, Mr. Hungar, with the marshal's announcement at the --at the beginning of this session. God save the United States and this Honorable Court. There --there are many people who don't believe in God.
>
> MR. HUNGAR: That's correct, Your Honor. And clearly --
>
> JUSTICE SCALIA: So that's okay?
>
> MR. HUNGAR: Yes.
>
> JUSTICE SCALIA: Why --why is that okay?

3

2. MR. GERSHENGORN [USA counsel -p. 22, ll 8-11]: "municipal legislatures can invoke the same tradition of solemnizing and invoking divine guidance as Federal and State legislatures."

3. MR. GERSHEN GORN [p. 26, l. 20 – l. 27, p. 3]: "So, for example, they point to the presence of children. But, of course, on the Senate floor are the Senate pages, who are all high school. And as the reply brief points out, there are often children in the galleries at State legislatures being acknowledged. And so some of those –those elements that the Respondents have pointed to for coercion we think are not ones that the Court should -- should adopt."

4. JUSTICE SCALIA [p. 40, l. 18 – p. 41, l. 14]: "it seems to me that you're missing here is --and this is what distinguishes legislative prayer from other kinds –the people who are on the town board or the representatives who are in Congress, they're citizens. They are there as citizens. . . .And as citizens, they bring, they bring to their job all of --all of the predispositions that citizens have. And these people perhaps invoke the deity at meals. They should not be able to invoke it before they undertake a serious governmental task such as enacting laws or ordinances?

There is a serious religious interest on the other side of this thing that --that -- that people who have religious beliefs ought to be able to invoke the deity when they are acting as citizens, and not –not as judges or as experts in --in the executive branch. And it seems to me that when they do that, so long as all groups are allowed to be in, there seems to me –it seems to me an imposition upon them to --to stifle the manner in which they --they invoke their deity."

5.  JUSTICE BREYER [without distinguishing the town council from other bodies, he said at p. 42, ll. 9 & 10]: "what do we do about the problem of prayer in these kinds of legislative sessions." [Justice Breyer offered 4 possibilities for dealing the matter none of which drew lines between the levels of government]

6.  Colloquy [p. 47, l. 24 – p. 48, l. 5]:

    JUSTICE KENNEDY: "your position is that town councils like Greece can have prayers if they are. . . non-proselytizing . That's your position?"

    MR. LAYCOCK [counsel for Respondents]: "I wouldn't use all those adjectives, but yes. . . . "

7.  JUSTICE KAGAN [p. 52, ll 2 – 4, 7-9, 20-24] "isn't the question mostly here in most communities whether the kind of language that I began with, which refers repeatedly to Jesus Christ . . . whether that language will be allowed in a public town session like this one? . . .

    Part of what we are trying to do here is to maintain a multi-religious society in a peaceful and harmonious way. And every time the Court gets involved in things like this, it seems to make the problem worse rather than better. What do you think?"

8.  JUSTICE KENNEDY  [p. 55, ll. 3-6]: "In a way it sounds quite elitist to say, well now, we can do this in Washington and Sacramento and Austin, TX, but you people up there in Greece can't do that."

9.  MR. HUNGAR [Petitioner's Counsel , p. 58, ll. 14 – 16]: "It makes no sense to suggest that a prayer at the local level is more dangerous for Establishment Clause purposes than what Congress is doing."

To the extent that this Court does address *Lee / Lemon* and endorsement issues, we defer to the District to defend its prayer policy. Although Plaintiffs' contend that they are not challenging the constitutionality of S.C. Code Ann. §6-1-160, to the extent that, *arguendo,* the statute is at issue, we believe that it is sustainable under *Lemon / Lee* and the endorsement tests, because it is directed at an adult deliberative bodies rather than school children in the class room and, in compliance with the *Lemon* test, it has a secular purpose, does not have the primary effect of advancing religion and does not create excessive government entanglement with religion. The statute is not directed at graduation ceremonies that were at issue in Lee and it broadly includes multiple local bodies, not just school districts.

*Indian River* did not take issue with the argument in that case that the purpose of the prayer policy was to "solemnify" its meeting. Certainly §6-1-160 is consistent with such a purpose, and as noted below, includes compliance with constitutional law in the definition therein of a "public invocation."

The Third Circuit also emphasized the wording of the prayers at issue and the history of the adoption of the related policy in finding the policy to have the effect of advancing religion and the related problem of communicating the endorsement of religion (*Lynch v. Donnelly*, 465 U.S. 668, 692 (1984) (O'Connor, J., concurring)). Neither of those points about the content of the prayers or the history of the policy are placed in issue as to the face of §6-1-160.

As to the third prong of the *Lemon* test, nothing on the face of §6-1-160 creates excessive entanglement with religion. Although *Indian River* found entanglement in the Board's composition and recitation of the prayer, §6-1-160 permits a variety of speakers to offer prayers including those in the community who are not Board employees. The statute refers at least twice to compliance with constitutional law as requirements for the invocation.

6

Plaintiffs acknowledge that they are not challenging §6-1-160. That law is constitutional and respectfully, no ruling should be issued that questions its constitutionality.

                    Respectfully submitted,

                    ALAN WILSON
                    Attorney General
                    Federal ID No.10457

                    ROBERT D. COOK
                    Solicitor General
                    Federal ID No. 285
                    Email: AGRCOOK@SCAG.GOV

                    /s/ J. Emory Smith, Jr.
                    J. EMORY SMITH, JR.
                    Deputy Solicitor General
                    Federal ID No. 3908
                    Email: AGESMITH@SCAG.GOV
                    Post Office Box 11549
                    Columbia, South Carolina 29211
                    Phone: (803) 734-3680
                    Fax: (803) 734-3677

                    Counsel for the Attorney General