UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Matthew Alexander Nielson; J.Z., a Minor under age 18 by his Parent and Guardian Michele Stephens; D.M., a Minor under age 18 by her Parent and Guardian Victoria Reed; and the Freedom From Religion Foundation, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> School District Five of Lexington and Richland Counties, <br><br> Defendant. | C.A. No. 3:12-cv-01427-CMC <br><br><br> **JOINT STATEMENT OF FACTS** |

By Text Order dated July 11, 2014, the Court has directed the parties to file a Stipulated Statement of Facts relevant to the remaining issues in the above-referenced case. The parties hereby stipulate as follows:

1. The Defendant School District Five of Lexington and Richland Counties ("District") is a public school district located in Lexington and Richland Counties in the state of South Carolina and serves students from pre-school age through grades 12. The District's 2013-14 enrollment was approximately 16,270 students. The District is comprised of 12 elementary schools, 4 middle schools, 5 high schools, and an alternative academy.

2. The Board of Trustees of School District Five of Lexington and Richland Counties ("Board") is composed of seven trustees who are responsible under State law for governing the District. See S.C. Code §59-19-10. Board members are elected and required to be residents of the District. Four members represent the portion of the District located in Lexington County and are elected by the registered voters therein. Three members are required to be

residents of the portion of the District located in Richland County and are elected by the registered voters therein. Each trustee is elected to serve a four-year term. See Act 287 of 1987 and Act 218 of 1993; Policy BB–School Board Legal Status.

3. The General Assembly has vested local boards of trustees with the operation and governance of their respective school districts. As part of their duties, school boards manage and control local educational interests of the district. *See* S.C. Code § 59-19-90(7). This includes, but is not limited to, decisions regarding contractual matters (S.C. Code § 59-17-10), real estate and school property matters (S.C. Code §§ 59-19-120, 125, 170, 180, 250), purchasing (S.C. Code § 59-19-80), the power of eminent domain (S.C. Code § 59-19-200), approval of all hiring decisions (S.C. Code § 59-19-200), taxation within statutory limits (Act 280 of 1979) and teacher employment matters pursuant to the Teacher Employment and Dismissal Act (S.C. Code § 59-25-410, *et. seq*). More importantly, the Board "may prescribe such rules and regulations not inconsistent with the statute law of this State as they may deem necessary or advisable to the proper disposition of matters brought before them." *See* S.C. Code § 59-19-110.

4. The District asserts that the Board is the District's official policy-making body. Board Policy BBA Board Powers and Duties and state statute, including S.C. Code § 59-19-90 and 110, outline the Board's powers and functions. In addition to the legislative and policy-making functions, the Board's general functions include, but are not limited to, the following: delegation of executive powers, quasi-judicial, decision-making, educational planning, interpretation, operational action, provision of financial resources, and official visits to schools.

5. Plaintiffs do not agree that the Board is the District's official policy-making body and instead assert only that the Board may prescribe rules and regulations not inconsistent

with state law pursuant to S.C. Code § 59-19- 110.  The Board takes a broad view of its functions, to include the following: legislative/policymaking, executive, quasi-judicial, educational planning, interpretation, operational action, provision of financial resources, reviewing action, and visits to schools.  See Policy BBA Board Powers and Duties.

6. The Board develops rules and policies to govern education in the District, with those policies reflecting the requirements of state and federal law as well as the needs and goals of the community.

7. The South Carolina Freedom of Information Act defines a "public body" to include school districts. See S.C. Code § 30-4-20(a).

8. S.C. Code § 6-1-160(A)(2), addressing local governments, defines "deliberative public body" to include "a state board or commission, the governing body of a county or municipal government, a school district, a branch or division of a county or municipal government, or a special purpose or public service district."

9. As members of a public, elected body, Board members seek to respond to their constituents' interests. Constituent input may play a role in the Board's decision-making. The Board maintains communication with its various constituencies served by District schools. In 2006, to reflect its existing practice of receiving constituent feedback, the Board revised Policy BEDH--Public Participation at Meetings. See Policy BEDH.

10. The Board conducts two regular monthly meetings, on the second and fourth Monday of each month, held in one of the District's schools during the school year and at the District Office when school is not in session. Meetings generally are held in the evening. See S.C. Code § 59-1-340; Policy BE.  All meetings of the Board are open to the public except those executive sessions permitted under state law. See S.C. Code § 59-1-340 and §§ 30-4-60 – 70.

11. The Parties disagree as to the frequency, amount, and scope of student participation at Board meetings, as well as their obligation to do so, if any. The Parties agree, however that Joint Stipulated Facts Nos. 12 - 16 outline when and if students may generally participate.

12. Among those students who attend Board meetings are those students present for the District's "*School Board Spotlight*;" those who are invited by their school principal to lead the Pledge of Allegiance, and on occasion, those who choose to observe to receive credit in connection with a government class.

13. The minutes of the Board meetings between August 2012 and June 2013 reflect that the following students led the Pledge of Allegiance, as follows:

| Date | Scheduled Speaker | Actual Speaker |
| --- | --- | --- |
| 8/13/12 | Laura Katherine Perla, a rising first grade student at River Springs Elementary School | Austin Addison, student at Irmo High School |
| 9/10/12 | Laura Phipps, a fifth grade student at Nursery Road Elementary School | Laura Phipps |
| 9/24/12 | Andrew Talkish, student in Oak Pointe Elementary student government | Andrew Talkish |
| 10/8/12 | Drew Delk and Harrison Yarbrough, students at River Springs Elementary School | Drew Delk and Harrison Yarbrough |
| 10/22/12 | Cody Millager, high school student | Cody Millager |
| 11/19/12 | Roger Pedroni, student council president at Irmo Elementary School | Hannah Rives, student council vice president at Irmo Elementary School |

4

| | | |
|---|---|---|
| 1/14/13 | Bailey Gowans, student body president at Chapin High School | Bailey Gowans |
| 1/28/13 | Tristan Yates, a student at the Center | Tristan Yates |
| 2/11/13 | Rayne Norris and Olivia Calhoun, students at Ballentine Elementary School | Rayne Norris and Olivia Calhoun |
| 2/25/13 | Carly Smith, a student at the Center | Carly Smith |
| 3/11/13 | Karina Desai, student council president at Dutch Fork Middle School | Karina Desai |
| 3/25/13 | Adam Miller, Biosystems Engineering Technology student | Adam Miller |
| 4/22/13 | Allie Anderson, a fifth grade student at Chapin Elementary School | Allie Anderson |
| 5/6/13 | Damon Williams, a fifth grade student at Dutch Fork Elementary School | Damon Williams |
| 5/20/13 | Ashley Graham, a student at the Center for Advanced Technical Studies | Ashley Graham |

14. Students also may choose to attend and participate in Board meetings as any other member of the public. See Board Policy JIB--Student Involvement in Decision Making; Board Policy BEDH. However, the Board provides several processes by which students may provide input into policy development or address complaints or concerns without attending Board meetings. See Policy JIB and Policy JII--Student Concerns Complaints and Grievances.

Those processes include a complaint process outlined in Policy JIB and Policy JII- Student Concerns, Complaints, and Grievances, as well as school and district-level student input groups.

15. To the extent that the Board addresses other individual student matters, those generally are limited to the Board's review of written submissions and do not include a hearing before the Board. See Board Policy JII.

16. Likewise, Board review of student disciplinary matters is based on the existing record and does not require student attendance at a Board meeting. See Policy JKE-- Expulsion of Students.  Pursuant to District policy JKE-- Expulsion of Students, the decision of the District Hearing Officer may be appealed to the District Board of Trustees only where one of the following is alleged: 1) misinterpretation of the rules by the school principal or the Hearing Officer; or 2) failure to provide due process to the student or parents/legal guardian.  The Board will not hear an appeal based on a student's plea for leniency.  In addition, the Board's decision on any appeal is based on the existing record, rather than the introduction of any new evidence. (See Board Policy JKE).  Prior to allowing any appeal to proceed to the Board, the District has implemented a requirement that the parents/guardians first meet with the Hearing Officer to discuss the basis for his decision and the appeal procedure.  Very few parents or students appeal the Hearing Officer's decision in an expulsion matter to the Board of Trustees. (Harris Affidavit at ¶¶ 4, 5).  Moreover, the Board has discretion whether to hear any such appeal. (See Policy JKE; Harris Affidavit at ¶ 5).  Over the past eight (8) years, there has only been one instance where the Board has heard the appeal of a student expulsion.  In that case, the student was present, but was not required to address the Board. (Harris Affidavit at ¶ 6).

17. Among those students who have attended Board meetings were Plaintiffs Matthew Neilson and Jacob Zupon. Plaintiff Mathew Nielson attended Irmo High School, which is a school governed by the Board. He states that he is religiously unaffiliated in that he is not a religious person and does not believe in a god or supreme being. (Nielson Dep. 15:7-15:12). Plaintiff Nielson believed that he had attended at least two Board meetings, and knew that he had attended one Board meeting while he was a student. (Nielson Dep. 63:9-14). Plaintiff Jacob Zupon also attended Irmo High School. Plaintiff Zupon states that he identifies as an agnostic atheist. Following initiation of this litigation, he attended meetings of the Board in person and viewed meetings online. (Zupon Decl. 1-2).

18. Until August 2013, the Board opened its meetings with a prayer typically delivered by a District employee or a Board member. A review of board minutes retrieved from the District Five web site reveals the following meeting locations and invocations delivered before August 2013:

| Date     | Invocation Speaker | Meeting Location                      |
|----------|--------------------|---------------------------------------|
| 7/23/12  | Dr. Karl Fulmer    | H. E. Corley Elementary               |
| 8/13/12  | Mark Bounds        | District Office                       |
| 9/10/12  | Sean Brown         | Nursery Road Elementary               |
| 9/24/12  | Mark Bounds        | Oak Pointe Elementary                 |
| 10/8/12  | Adam Williams      | River Springs Elementary              |
| 10/22/12 | Timothy Shull      | Center for Advanced Technical Studies |
| 11/19/12 | Barry Russell      | Irmo Elementary                       |
| 1/14/13  | Mark Bounds        | Chapin High School                    |
| 1/28/13  | Mark Bounds        | Center for Advanced Technical Studies |
| 2/11/13  | Mark Bounds        | Ballentine Elementary                 |
| 2/25/13  | Mark Bounds        | Center for Advanced Technical Studies |
| 3/11/13  | Mark Bounds        | Dutch Fork Middle                     |
| 3/19/13  | no invocation*     | District Office                       |
| 3/25/13  | Mark Bounds        | Center for Advanced Technical Studies |
| 4/22/13  | Mark Bounds        | Chapin Elementary                     |
| 5/6/13   | Mark Bounds        | Dutch Fork Elementary                 |
| 5/20/13  | Mark Bounds        | Center for Advanced Technical Studies |
| 5/29/13  | no invocation*     | District Office                       |

7

6/17/13        Mark Bounds            Center for Advanced Technical Studies

(Joint Ex. Bd. Mtg. Mins.)  The asterisk denotes a specially called meeting. In each case, the speaker is scheduled ahead of time, as is reflected in the official agenda published prior to the meeting. (Joint Ex. Bd. Mtg. Agendas).

19. Prior to August 2013, there was no written policy governing these invocations in place. In August 2013, however, the Board added the following language to Policy BE-School Board Meetings:

> The board is a deliberative public body and will open its regular and specially called public meetings with a public invocation complying with S.C. Code § 6-1-160 of the Code of Laws of South Carolina.
>
> The public invocation will be non-sectarian and will not proselytize for or advance any one, or disparage any other, faith or belief. The public invocation is for the benefit of the board, but no member of the board, or any other person attending the meeting, shall be required to participate in the public invocation. The purposes of the public invocation are to express thankfulness for the right of self-government, to solemnize the board's legislative tasks, dignify and confirm the seriousness of board meetings, encourage respect and appreciation for all board members, seek to unite and not divide the board, and to contribute to the wisdom and soundness of decisions by the board.
>
> The public invocation will be offered on a voluntary basis by a member of the board, rotating from meeting to meeting, in alphabetical order or other objective method of rotation, among all members of the board. A board member may offer a moment of silence for silent prayer or reflection in addition to or in lieu of the public invocation.

(SIGNATURE BLOCKS ON NEXT PAGE)

By:   s/Meredith L. Seibert_____
Andrea E. White (Fed. I.D. No. 5620)
Meredith L. Seibert (Fed. I.D. No. 9919)

DUFF, WHITE & TURNER, LLC
3700 Forest Dr., Suite 404
P.O. Box 1486
Columbia, SC 29202
Telephone: 803.790.0603
Fax: 803.790.0605
awhite@dwtlawfirm.com
mseibert@dwtlawfirm.com

David L. Morrison, Esq. (Fed. I.D. No. 3581)
Kassi B. Sandifer, Esq. (Fed. I.D. No. 7439)

MORRISON LAW FIRM, LLC
7453 Irmo Drive, Suite B
Columbia, SC 29212
Telephone: 803.661.6285
Fax: 803.661.6289
david@dmorrison-law.com
kassi@dmorrison-law.com

Attorneys for Defendant School District Five of Lexington and Richland Counties


By:   s/Aaron J. Kozloski_____ _____
Aaron J. Kozloski, Esq. (Fed. I.D. No. 9510)

CAPITOL COUNSEL, LLC
P.O. Box 1996
Lexington, SC 29071
Telephone: 803.748.1320
Fax: 888.513.6021
aaron@capitolcounsel.us

Attorney for Plaintiffs

July 18, 2014
Columbia, South Carolina