IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | | |
|---|---|---|
| Matthew Alexander Nielson; J.Z., a Minor Under age 18 by his Parent & Guardian Michelle Stephens; D.M., a Minor Under age 18 by her Parent & Guardian Victoria Reed; the Freedom From Religion Foundation, Inc., | ) ) ) ) ) ) | Civil Action No. 3:12-cv-01427-CMC |
| Plaintiffs, | ) ) | SECOND SUPPLEMENTAL AMICUS MEMORANDUM |
| v. | ) ) | IN SUPPORT OF CONSTITUTIONALITY OF §6-1-160 |
| School District Five of Lexington & Richland Counties; Board of Trustees of School District Five of Lexington and Richland Counties; Dr. Stephen W. Hefner, in his official capacity as School District Five Superintendent; and Mr. Robert Gantt in his official capacity as School District Five Board Chairperson, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |

South Carolina Attorney General Alan Wilson, as amicus curiae, submits this second supplemental memorandum regarding the constitutionality of S.C. Code Ann. §6-1-160, the statute that authorizes various local governmental bodies, including school districts, to adopt policies to permit public invocations [1] The Attorney General concurs in the legal arguments in the Defendants' Memorandum in Support of its Motion for Summary Judgment as they apply to this statute, and he provides the following additional authority and argument.

---

[1] As we have noted previously, although Plaintiffs do not directly challenge the constitutionality of this statute (see note 4, pp. 9 & 10, Plaintiffs' Memorandum), they do challenge the related policy. Therefore, to the extent that the constitutionality of the statute is challenged or implicated by Plaintiffs' arguments, the Attorney General offers the following supplemental authority in addition to what he has previously provided.

**I**

**THE SCHOOL BOARD IS A DELIBERATIVE BODY
THAT MAY HAVE PUBLIC INVO CATIONS UNDER
*MARSH V. CHAMBERS* AND *TOWN OF GREECE V. GALLOWAY***

Plaintiffs' misread *Town of Greece, N.Y. v. Galloway*, 134 S. Ct. 1811, 1819 (2014) as requiring a focus on the history of the Board's prayer practices to determine whether they are appropriate under *Marsh v. Chambers*, 463 U.S. 783 (1983). *Town of Greece* instead stated that "[t]he Court's inquiry. . . must be to determine whether the prayer practice in the town of Greece fits within the tradition long followed in Congress and the state legislatures." *Id.* Therefore, in the instant case, the issue is whether school board prayer fits within congressional and state legislative traditions. The issue is not, as Plaintiffs argue, whether school board prayer has an "unbroken tradition" itself or a "historical taproot." Plaintiffs' Memorandum in Support of Summary Judgment at page 9.

The statutory authorization for prayer practices of the Richland – Lexington School Boar fit with the legislative tradition referenced by *Greece.* S.C. Code Ann. §6-1-160 allows for public invocations by deliberative bodies and defines those terms as follows under part A:

> 1) "Public invocation" means an invocation delivered in a method provided pursuant to subsection (B) to open the public meeting of a deliberative public body. In order to comply with applicable constitutional law, a public invocation must not be exploited to proselytize or advance any one, or to disparage any other faith or belief.

> (2) "Deliberative public body" means a state board or commission, the governing body of a county or municipal government, a school district, a branch or division of a county or municipal government, or a special purpose or public service district.

These terms are consistent with *Town of Greece* and *Marsh.* *Greece* did not limit the invocations to exclusively legislative bodies. It applied *Marsh* to a town board meeting, but also

indicated that the case applies to other types of bodies as well: ("It is presumed that the reasonable observer . . .understands that its purposes are to lend gravity to public proceedings " 134 S. Ct. at 1823; "these invocations have been addressed to assemblies comprising many different creeds." 134 S. Ct at 1825 (plurality).

Plaintiffs misapply *Greece* in asserting that the Defendant School Board "is simply an administrative agency with traditionally separate legislative, executive and quasi-judicial powers within the bounds within the bounds of its statutory authority." Plaintiffs' Memorandum at p. 4. (emphasis added); however, their recognition that the Board has some legislative powers, is more than enough to apply *Greece* to the Board. That case applied *Marsh* to the town's board despite finding that "the prayer is delivered during the ceremonial portion of the town's meeting [when] Board members are not engaged in policymaking . . . . but in more general functions, such as swearing in new police officers, inducting high school athletes into the town hall of fame, and presenting proclamations to volunteers, civic groups, and senior citizens." 134 S. Ct. at 1827(plurality). (Emphasis added). Rather than limiting prayer because non-legislative functions were involved, *Greece* expressly approved of its use during the ceremonial, non-legislative part of the meeting. 134 S. Ct. at 1828 ("The prayer in this case has a permissible ceremonial purpose. It is not an unconstitutional establishment of religion."(plurality)). Of course, the Court's treatment of policymaking as an important town function certainly would encompass South Carolina school boards which also exercise such functions. *See, eg,* §§59-19-90(3) (promulgate rules and regulations), §59-19-110 (rule making power) and *infra*.

As significant parts of the governmental structure and process in South Carolina, school district boards are certainly the kinds of public bodies to which *Greece* and *Marsh* extend. As recognized by the federal courts in this state in the Order of Justice Blatt in *United States v.*

*Charleston Cnty. Sch. Dist*., 738 F. Supp. 1513, 1525 (D.S.C. 1990) aff'd in part, vacated in part, 960 F.2d 1227 (4th Cir. 1992), "[t]he courts have long acknowledged local control of public education in this country as a deeply rooted tradition. The tradition exists in South Carolina in which "[a] school district is a body politic and corporate under the laws of this State and constitutes one of our most important political subdivisions...." *Patrick v. Maybank*, 198 S.C. 262, 17 S.E.2d 530, 534 (1941);. . . § 59–17–10 of the 1976 Code ["Every school district is and shall be a body politic and corporate . . . ,"). School Board meetings are of such importance that their time, place and public nature are specifically addressed by statute. §59-1-340; *see also,* §30-4-20 (school districts are public bodies under the Freedom of Information Act.) *Braswell v. Roche*, 299 S.C. 181, 183, 383 S.E.2d 243, 244 (1989)(school district board meeting to discuss matters over which it had "supervision, control, jurisdiction or advisory power" was a "meeting" under FOIA). Moreover, the South Carolina General Assembly that created the school boards has determined that they are "deliberative" and are the kinds of public bodies that may permit public invocations. The legislature's determination of the nature of school boards and their authority is entitled to a high degree of deference. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) ("Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign."); *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 612 (1937)("How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself.").

We have previously submitted the Opinion of this Office that the *Marsh* exception for deliberative bodies applies to a school board and that §6-1-160 is facially constitutional. Op. S.C. Atty Gen., 2013 WL 482679 (January 28, 2013). This Opinion is entitled to great weight, and we respectfully request that this Court consider it in reaching a decision in this case. *Cahaly*

*v. LaRosa*, 6:13-CV-00775-JMC, 2014 WL 2592555 (D.S.C. June 10, 2014)("[t]he court finds that the state attorney general's opinion could be relevant to its inquiry because '[a]lthough attorney general opinions are not precedential, they are afforded great weight in South Carolina, particularly in matters of statutory construction.'" (Copy attached).

Nothing about the School Board setting takes it out of the *Town of Greece/ Marsh* exception. *Greece* recognized that children are sometimes present at town meetings (134 S. Ct. at 1831 and 1832 - Justice Alito, with Justice Scalia, concurring), but their presence did not change the result nor should they do so here. The Court found the town setting to be very different from the graduation ceremony at issue in *Lee v. Weisman, 505 U.S. 577*(1992) "where school authorities maintained close supervision over the conduct of the students and the substance of the ceremony, a religious invocation was coercive as to an objecting student." 134 S. Ct. at 1827. Unlike the controlled setting for students in *Lee*, "[n]othing in the record suggests that members of the public are dissuaded from leaving the [school board] meeting room during the prayer, arriving late, or even, as happened here, making a later protest." *Id.*

Most certainly, §6-1-160 is not coercive, and as discussed, *infra*, avoids even the *Greece* Dissent's concerns. The Court rejected arguments of the Respondents in *Town of Greece* that the Town's prayer practice was coercive, and Plaintiffs do not appear to argue that board prayer is coercive here beyond just a passing quote from *Lee* . 134 S. Ct. at 1825 (plurality) and 134 S. Ct. at 1837 (Justice Thomas with whom Justice Scalia joins).

The parties have stipulated that no further issues remain if this Court determines that *Marsh* and *Town of Greece* apply to school board prayer. Therefore, the following discussion of the applicable constitutional test only needs to be reached if this Court, *arguendo,* finds those cases inapplicable to such prayer.

## II

## EVEN UNDER THE DISSENTS IN *GREECE*,
## §6-1-160 IS STILL CONSTITUTIONAL AS TO SCHOOL BOARDS

Not  even the dissents in *Town of Greece* would warrant a finding against §6-1-160 as to school boards  if, *arguendo,* this Court were to find that the Richland-Lexington  School District Five Board is not covered by the exemptions in *Marsh* and *Greece* for legislative bodies and town boards.  In the principal dissent in *Town of Greece,* Justice Kagan suggested that the Town could avoid constitutional problems with invocations by "invit[ing] clergy of many faiths."  134 S. Ct. at 1851.  South Carolina's statute provides just such an option by allowing the public body to adopt a policy to select an invocation speaker "on an objective and rotating basis from among a wide pool of the religious leaders serving established religious congregations in the local community in which the deliberative public body meets.  § 6-1-160(B)(3).  Further, the invocations "must not be exploited to proselytize or advance any one, or to disparage any other faith or belief."  §6-1-160(B)(1).

The opinions of at least five of the *Town of Greece* Justices indicate that they would apply a *Lee v. Weisma*n *supra,* coercion test to board prayers even if, *arguendo,* the board were not entitled to the same exception granted legislative bodies under *Marsh*.  Certainly the instant case does not involve the coercion found by the Supreme Court in the graduation prayer at issue in *Lee* or in the invocations before football games addressed in *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000), very different settings from a school board meeting.  Nothing about §6-1-160 would make school board prayer violate the *Lee* coercion test just as the Town board prayer was not coercive in *Greece.* The much criticized three-part *Lemon v. Kurtzman*, 403 U.S. 602

(1971) test[2] is not even cited in *Greece* except in Justice Breyer's individual dissent finding that the town "failed to make reasonable efforts to include prayer givers of minority faiths. . . . " 134 S. Ct. at 1841. South Carolina's law does provide for such reasonable efforts to include "a wide pool of . . . religious leaders". § 6-1-160(B)(3). Therefore, even under the dissents in *Greece,* South Carolina's statute is constitutional.

## CONCLUSION

Plaintiffs have acknowledged that they are not challenging §6-1-160. That law is constitutional and respectfully, no ruling should be issued that questions its constitutionality.

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: AGRCOOK@SCAG.GOV

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: AGESMITH@SCAG.GOV
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677

Counsel for the Attorney General

---

[2]*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. at 319 (2000) ("oft-criticized test of *Lemon v. Kurtzman*" - Justices Rehnquist, Scalia and Thomas dissenting ).