UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Matthew Alexander Nielson; J.Z., a Minor under age 18 by his Parent and Guardian Michele Stephens; D.M., a Minor under age 18 by her Parent and Guardian Victoria Reed; and the Freedom From Religion Foundation, Inc.,<br><br>                  Plaintiffs,<br><br>    v.<br><br>School District Five of Lexington and Richland Counties,<br><br>                  Defendant. | C.A. No. 3:12-cv-01427-CMC |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

_____

August 28, 2014
Columbia, SC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………..………..……......iii

I.      INTRODUCTION……………………………………………...………..1

II.     ARGUMENT……………………………………………………..……..1

        A.      The Board Is a Deliberative Public Body Warranting Consideration
                of *Marsh*…………………………………………………………..……1

        B.      The Board's Prayer Practice Fits Within the Historical Tradition
                Contemplated by *Marsh*…………………………………………..……2

        C.      The Board Prayer Opportunities Are Offered for the Benefit of
                and Directed to Board Members.……..…………………………….....4

        D.      If This Court Determines that the Board's Prayer Practice Requires
                Analysis Under Traditional School Prayer Case Law, *Lee* Is the
                Appropriate Test……………………………………………….………5

III.    CONCLUSION……………………………………………………….…..6

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Joyner v. Forsyth County North Carolina,*
  653 F.3d 341 (4th Cir. 2011) ........................................................................... 3
*Lee v. Weisman*,
  505 U.S. 577, 112 S.Ct. 2649 (1992)……………………………………………5, 6
*Lemon v. Kurtzman*,
  403 U.S. 603, 91 S.Ct. 2105 (1971)……………………………………………5, 6
*Marsh v. Chambers*,
  463 U.S. 783, 103 S.Ct. 3330 (1983 ................................................... passim
*Patrick v. Maybank*,
  198 S.C. 262, 17 S.E.2d 530 (1941)……………………………………………1
*Simpson v. Chesterfield Cnty. Bd. of Supervisors,*
  404 F.3d 276 (4th Cir.2005) .......................................................................... 3
*Town of Greece, NY v. Galloway,*
  134 S.Ct. 1811, 188 L.Ed.2d 835 (2014)……………………………………...passim

## <u>Regulations</u>

S.C. Code Ann. § 1-23-310(2)……………………………………………………1
S.C. Code Ann. § 6-1-160......................................................................... 2
S.C. Code Ann. § 8-11-46………………………………………………………2

# I.     INTRODUCTION

On August 7, 2014, the Parties filed cross motions for Summary Judgment. Defendant hereby submits this response to Plaintiffs' Motion and Memorandum In Support of Motion for Summary Judgment.

# II.     ARGUMENT

## A.     The Board Is a Deliberative Public Body Warranting Consideration of *Marsh*

Only legislative and deliberative public bodies warrant consideration of *Marsh,* 463 U.S. 783, 103 S.Ct. 3330 (1983). Asserting that the Board is an administrative agency of the state, rather than a legislative or deliberative public body, Plaintiffs conclude that the Supreme Court's holding in *Marsh* is not applicable to the Board under any circumstances. This conclusion, which relies on some statutes not applicable to the District and which disregards those statutes that are, is erroneous.

In support of their position that the Board is an administrative or regulatory agency, Plaintiffs mistakenly rely on the definition of "agency" found within the South Carolina Administrative Procedures Act, S.C. Code Ann. § 1-23-310(2). However, that definition does not encompass local school districts, which are instead "political subdivisions." Indeed, a school district in South Carolina is "a body politic and corporate under the laws of this State and constitutes one of our most important political subdivisions." *Patrick v. Maybank*, 198 S.C. 262, 17 S.E.2d 530 (1941). To agree with Plaintiffs' assertion that the Board "is hardly different from . . . the Board of Dentistry, the Election Commission, or even the Department of Revenue," this Court would have to disregard the statutory law outlining the creation, election, and duties of the Board. These laws differ significantly from those laws creating and setting forth the

1

responsibilities and authority of the state administrative agencies referenced by Plaintiffs.[1] [2]  An explanation of the various South Carolina state statutes and relevant case law establishing the legislative and other policy-making functions of the Board, as well as the South Carolina General Assembly's treatment of the Board as a deliberative public body, is included in Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment.  While Plaintiffs argue that "the Board is not the type of deliberative body contemplated by *Marsh* simply because the General Assembly declares so by legislative fiat," that argument ignores the fact that the General Assembly, as evidenced by the passage of legislation over the years, characterizes the Board in the same manner as other legislative and deliberative public bodies.

### B.      The Board's Prayer Practice Fits Within the Historical Tradition Contemplated by *Marsh*

Plaintiffs argue that only "limited forms of legislative prayer were grandfathered in under the Establishment Clause by the *Marsh* Court."  In support of their position that the Board does not have a historical tradition of prayer at the start of its meetings, Plaintiffs note that the District was created in 1951; that S.C. Code Ann. § 6-1-160 was enacted in 2008; and that

---

[1] Even state laws regarding the transfer of employee leave recognize that a school district is not a state agency. See S.C. Code Ann. § 8-11-46. "An employee of a state agency transferring to a school district of this State or a school district employee transferring to a state agency is permitted to transfer to and retain at his new employer all sick leave he accumulated at his former employer regardless of his employment status at the new employer. Sick leave not to exceed sixty days lost by a school district employee as a result of changing employment from the school district to a state agency or by a state employee as a result of changing employment from a state agency to a school district is restored if the employee was employed by the school district or the state agency after June 28, 1984, and is employed on June 30, 1991."

[2] The District further notes that, absent the definition of agency and unfounded assumptions, Plaintiffs have provided no statutes, case law, or other evidence in support of the contention that the various named agencies and the District are similar in creation, selection, duties and responsibilities, while the Joint Statement of Stipulated Facts references numerous statutes outlining the legislative functions of the District.

the District did not adopt its current policy permitting a prayer at the beginning of Board meetings until 2013.

Plaintiffs' reliance on those facts in support of their position that *Marsh* is not applicable to the District is misplaced. The relevant inquiry is "whether the prayer practice . . . fits within the tradition long followed in Congress and the state legislatures," rather than the length of time that a legislative or deliberative public body has been in existence or how long that public body has offered a prayer at its meetings either by practice or policy. *Town of Greece*, 134 S.Ct. 1811, 1819, 188 L.E.2d 835 (2014). This is true whether the public body is a state legislature as was the case in *Marsh* or a local legislative or deliberative public body not specifically mentioned therein. *See Id.* (there is historical precedent of local legislative bodies opening their meetings with prayer in the same manner as Congress and state legislatures). Further, post-*Marsh*, both the Fourth Circuit Court of Appeals and the Supreme Court have applied the legislative prayer exemption to local public bodies where, as here, the purpose of the prayer is a symbolic expression acknowledging widely-held beliefs. *See Town of Greece* (monthly town board meetings have opened with prayer since 1999); *Simpson v. Chesterfield Cnty. Bd. of Supervisors*, 404 F.3d 276 (4th Cir.2005)(applying *Marsh* to prayers given at county board meetings, where prayer practice began immediately after the *Marsh* decision in 1984); *Joyner v. Forsyth County NC*, 653 F.3d 341 (4th Cir.2011)(using *Marsh* analysis to prayer policy enacted by County Board of Commissioners in 2007).

The uncontroverted evidence establishes that the Board's practice and policy regarding opening its meetings with a prayer adheres to the tradition contemplated by *Marsh*, regardless of when it commenced or was reduced to writing. The prayer tradition as authorized by *Marsh* permits those prayers that lend "gravity to public business, reminds lawmakers to

3

transcend petty differences in pursuit of a higher purpose, and expresses a common aspiration to a just and peaceful society." *Town of Greece* at 1818.  Both District Policy BE and information provided by Board members establish that this is precisely the tradition that the Board follows with its own prayer practice.

> ### C. The Board Prayer Opportunities Are Offered for the Benefit of and Directed to Board Members.

In support of their argument that *Marsh* should not be applied to school boards, Plaintiffs also misconstrue language in *Town of Greece* stating that, when evaluating whether Marsh is applicable, a court must consider "both the setting in which the prayer arises and the audience to which it is directed." *Town of Greece* at 1825.

A closer reading of the Court's opinion clarifies that in referring to "the audience to which [prayer] is directed," the Supreme Court was considering whether the prayer was directed to the members of the legislative or deliberative body or whether the prayer was directed to those members of the public in attendance. *See Id.* (principal audience for these invocations is not, indeed, the public but lawmakers themselves); *Marsh* at 588 (describing prayer exercise as "an internal act" directed at "own members," rather than effort to promote religious observance among public).  Despite Plaintiffs' attempt to frame it otherwise, the consideration of "audience" is not a complicated inquiry into the ages, positions, and matters that audience members may have pending before the public body.  Rather, that inquiry concerns to whom the prayer is directed.  In this case, the evidence makes clear that the Board's prayer opportunities are solely directed to and for the benefit of the Board.[3]

---

[3] Plaintiffs later state that "the prayer officiant also invites all in attendance to participate by saying 'Let us pray' or by another call to collective prayer." That language is a routine introduction to many prayers and there is no evidence that such an opening was directed at the public, rather than the Board, or was used to direct the public to participate.

Plaintiffs also argue that because the audience at Board meetings includes a time for public comment, and a possibility that audience members might address the Board, this Court should consider that fact.  However, Justice Alito's concurrence in *Town of Greece* flatly rejects that argument.  Justice Alito described the meetings in *Town of Greece* as "similar to most other town council meetings across the country. The prayer took place at the beginning of the meetings. The board then conducted what might be termed the 'legislative' portion of its agenda, during which residents were permitted to address the board.  After this portion of the meeting, a separate state of the meetings was devoted to" other matters.  The concurrence continues to conclude that it is common for residents to attend meetings and to speak on various matters and, further, that it was not unusual for students to attend.    However, there is "no sound basis for drawing . . . a distinction between "meetings with these characteristics" and the state and national bodies identified in *Marsh. Town of Greece* at 1231-1232.

**D.    If This Court Determines that the Board's Prayer Practice Requires Analysis Under Traditional School Prayer Case Law, *Lee* Is the Appropriate Test.**

Plaintiffs assert that "courts across the country have treated *Marsh* as a narrow exception to the traditional *Lemon* analysis," continuing to argue that *Lemon* is the appropriate test this Court should apply if *Marsh* is not applicable.  While legislative prayer generally is referred to as an "exception," *Town of Greece* confirmed that *Marsh* is not the "historical aberration" that Plaintiffs present to this Court.  More importantly, despite Plaintiffs' argument otherwise, *Lemon* is no longer the favored standard for traditional Establishment Clause analysis, particularly as it relates to school-based religious exercises.

Plaintiffs insist that *Marsh* is not applicable to the Board based in part on the Board's role in public education and Plaintiffs' conclusions regarding the attendance and participation of students at Board meetings.  Plaintiffs do not, however, argue that the generally

5

accepted jurisprudence governing the constitutionality of prayer in the school environment is applicable, instead contending that *Lemon* is the appropriate test.  However, relevant case law establishes that the courts' rationale in limiting school-endorsed or initiated prayer is to protect students from government coercion, particularly where the presence of those students is mandated by state law or is otherwise integral to the school experience.  Under the facts of this case, if the Court applies the coercion standard as articulated in *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649 (1992), the Court would find that there is no concern for coercion of students.  Among other considerations, as outlined in Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, any attendance by students is purely voluntary in every sense; students are free to come and go as they see fit (as is any meeting attendee); and prayers are offered solely by and for the benefit of the Board members, rather than directed to the audience.

## IV.    CONCLUSION

        The Board is a deliberative public body to which the U.S. Supreme Court's holding in *Marsh* applies.  As a result, this Court should hold that the Board may continue to open its meetings with a prayer or invocation.

(SIGNATURE BLOCK ON NEXT PAGE)

Respectfully Submitted:

By:    s/ Andrea E. White _____
       Andrea E. White (Fed. I.D. No. 5620)
       Meredith L. Seibert (Fed. I.D. No. 9919)

       DUFF, WHITE & TURNER, LLC
       3700 Forest Dr., Suite 404
       P.O. Box 1486
       Columbia, SC 29202
       Telephone:  803.790.0603
       Fax:  803.790.0605

       awhite@dwtlawfirm.com
       mseibert@dwtlawfirm.com


       s/ David L. Morrison_____
       David L. Morrison, Esq. (Fed. I.D. No. 3581)
       Kassi B. Sandifer, Esq. (Fed. I.D. No. 7439)

       MORRISON LAW FIRM, LLC
       7453 Irmo Drive, Suite B
       Columbia, SC 29212
       Telephone: 803.661.6285
       Fax:  803.661.6289

       david@dmorrison-law.com
       kassi@dmorrison-law.com

       Attorneys for Defendant

August 28, 2014
Columbia, South Carolina