UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
Columbia Division

| | |
|---|---|
| Matthew Alexander Nielson; J.Z., a Minor Under age 18 by his Parent & Guardian Michelle Stephens; D.M., a Minor Under age 18 by her Parent & Guardian Victoria Reed; and the Freedom From Religion Foundation, Inc., <br>         *Plaintiffs*, <br> ~ *vs.* ~ <br><br>School District Five of Lexington & Richland Counties, <br>        *Defendant*. | CA No. 3:12-cv-01427-CMC <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

The Defendant urges this Court to be the first to affirmatively extend the *Marsh v. Chambers*[1] legislative prayer exception to public school boards and disregard decades of U.S. Supreme Court jurisprudence concerning public schools.

The Defendant's argument teeters on a precarious assumption that it is a public deliberative body equivalent to a state legislature or the U.S. Congress. Of course it is not, nor is any school board, which explains why the defense's Motion for Summary Judgment offers no authority, precedential or otherwise, to justify the *Marsh* expansion it seeks.

**1. The Inherent Nature and Function of School Boards Distinguishes Them From Their Political Siblings.**

Defendant characterizes Plaintiffs contention that traditional Establishment Clause school cases apply to meetings of a school board "merely because the decisions of a school board relate to public education or because there is a possibility that students may be in attendance." (Def. Mo. Summ. J. 10).

---

[1] 463 U.S. 783 (1983).

– 2 –

Nonsense. Rather, like the Third and Sixth Circuits, Plaintiffs distinguish the Board from its fellow public bodies based on the pervasiveness of student presence and student involvement in its affairs and proceedings. Student insinuation into Board activities has been more than adequately documented in Plaintiffs' opening brief, and needn't be revisited here.

The defense's assertion that such attendance only happens "occasionally" and that "such attendance is all voluntary" (Def. Mo. Summ. J. 14-15) ignores the cold facts of record. Schoolchildren–elementary, middle and high–are recruited and summoned as active participants to recite the pledge, accept awards, present the colors, and take an active role in their educational infrastructure. Students participate in every meeting conducted during the school year.

To say it is voluntary to appear before the Board is akin to saying attendance at one's own graduation ceremony or a school football game is voluntary. We know better. Deep down, the Defendant knows better. "It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice." *Lee v. Weisman*, 505 U.S. 577, 596, (1992); *See also, Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 312 (2000) (Finding that "voluntary" attendance at football games with pre-game prayers did not mitigate the violation because the Constitution "demands that the school may not force this difficult choice upon these students."); *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 288 (1963) (Brennan, J., concurring) ("Thus, the short, and to me sufficient, answer is that the availability of excusal or exemption simply has no relevance to the establishment question…"); *Mellen v. Bunting*, 327 F.3d 355, 372 (4th Cir. 2003) ("…VMI cannot avoid Establishment Clause problems by simply asserting that a cadet's attendance at supper or his or her participation in the supper prayer are 'voluntary.'").

Case in point, Plaintiff Zupon attended a Board meeting when the Junior ROTC, of which

he was a member, was recognized by the Board for receiving the Air Force Association Sword of Excellence. (Zupon Decl. ¶ 6). To say that he should have forfeited the opportunity to be recognized by the school district because of Board prayer is no different than saying students should miss graduation or school football games because of prayer. In both *Lee* and *Santa Fe*, the Supreme Court has protected the rights of such students.

The Board's meetings are not, as Defendant states in cavalier fashion, "a gathering of adults, conducted for the purpose of carrying out the public's business." (Def. Mo. Summ. J. 15) That might be true for an agency/public body like the Workman's Compensation Commission, the DHEC Board, or the State Ethics Commission, but not for the School Board. Students are regular attendees and participants in Board meetings.

Students are even frequently the subjects of the prayers. For example, the Board prayer recited on April 22, 2013, included the call, "Father of All Mercies, may the students and staff of this school district experience your love and grace in profound and authentic ways. Lord, release truth in all of our schools. (Joint Exhibit G, p. 12; Dkt. 68-8). Plaintiff D.M. attended that meeting and heard the prayer. (D.M. Decl. ¶¶ 6-7). She said that: "I felt social pressure to bow my head and participate." *Id*. The pressure on students to participate also goes beyond social pressure. The person offering the prayer often calls for those in attendance to pray. In the very first prayer taking place after Policy BE was adopted, Chairman Gantt announced, "If you will, if all of you would bow your heads and pray with me." (Joint Exhibit G, p. 14).

The pervasive involvement and participation of students at meetings distinguishes the Board from legislative and city councils.

**2. Other Courts at the Lemon-Marsh Crossroads Have Eschewed Expanding Marsh.**

Defendant boldly asserts that "Federal courts around the country have held that the activities of school boards are 'legislative in nature,'" with citation to a single authority holding that school board members enjoy legislative immunity only when engaging in legislative activities, the same as any other state agency, *see Bruce v. Riddle, supra*. But there is more to what other courts have really done. This explanation properly begins with an examination of Marsh itself.

Marsh was decided in 1983, a dozen years after *Lemon* and thirty years after *Engel v. Vitale,* 370 U.S. 421 (1962), and *Sch. Dist. of Abington Twp. V. Schempp,* 374 U.S. 203 (1963). The *Marsh* Court mentioned *Lemon* only once in its opinion, and then only to refer to the proceedings below. This is notable to the extent that *Marsh* did not reshape time-tested Establishment Clause principles, but merely carved out a very narrow exception, which the High Court has never expanded, as the Fourth Circuit explains in *Wynne v. Town of Great Falls*:

> …[I]n the more than twenty years since Marsh, the Court has never found its analysis applicable to any other circumstances; rather, the Court has twice specifically refused to extend the Marsh approach to other situations. See Lee, 505 U.S. at 596, 112 S.Ct. 2649; Allegheny, 492 U.S. at 603, 109 S.Ct. 3086. Similarly, we and our sister circuits have steadfastly refused to extend Marsh. See, e.g., Coles v. Cleveland Bd. of Educ., 171 F.3d 369, 381 (6th Cir. 1999); North Carolina Civil Liberties Union Legal Found. v. Constangy, 947 F.2d 1145, 1148-49 (4th Cir. 1991).

376 F.3d 292, 302 (4th Cir. 2004). Of substantial note is the Fourth Circuit's express approval of the *Coles* case, which refused to extend Marsh to school board prayer.[2] The Fourth Circuit also

---

[2] Defendant criticizes Coles: "It is of note that the Order denying the petition for rehearing *en banc* in *Coles*, originally decided by a 2-1 panel split, included 7 dissents in favor of overturning the decision to apply *Marsh*." (Def. Mem. Summ. J. 12 n.4) This apparently was of no concern to the Fourth Circuit.

– 4 –

cited *Coles* approvingly in deciding that Marsh was inapplicable to mealtime prayers at a state military college:

> Put simply, the supper prayer does not share *Marsh's* "unique history." In fact, public universities and military colleges, such as VMI, did not exist when the Bill of Rights was adopted. *Opinion* at 625. We are therefore unable to apply *Marsh's* reasoning to the evaluation of the constitutionality of the supper prayer. *See Edwards v. Aguillard,* 482 U.S. 578, 583 n. 4, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (emphasizing that the *Marsh* analysis "is not useful in determining the proper roles of church and state in public schools, since free public education was virtually nonexistent at the time the Constitution was adopted"); *see also Coles v. Cleveland Bd. of Educ.,* 171 F.3d 369, 381 (6th Cir.1999) (noting that "*Marsh* is one-of-a-kind" and declining to apply *Marsh's* reasoning in assessing constitutionality of prayer at school board meetings).

*Mellen v. Bunting*, 327 F.3d 355, 370 (4th Cir. 2003). Given the Fourth Circuit's limited application of Marsh and its endorsement of *Coles*–twice–this Court should approach the Defendant's call to extend *Marsh* in this case with serious trepidation.

There is also a single, stark phrase in Marsh itself that counsels against its expansion into the school prayer realm: "Here, the individual claiming injury by the practice is an adult, presumably not readily susceptible to 'religious indoctrination,' or peer pressure." 463 U.S. at 792 (citations omitted). *Town of Greece v. Galloway* does not change the analysis. *See* 134 S. Ct. 1811, 1827 (2014) ("Neither choice represents an unconstitutional imposition as to mature adults, who 'presumably' are 'not readily susceptible to religious indoctrination or peer pressure.'").

In other Establishment Clause cases, the Supreme Court has recognized that heightened protection is applied in the public school context. The Court distinguished a Ten Commandments display on the grounds of a state capitol from the prohibition of such displays in public schools. The plurality opinion noted that *Stone v. Graham,* 449 U.S. 39 (1980), "stands as an example of the fact that we have 'been particularly vigilant in monitoring compliance with the Establishment

Clause in elementary and secondary schools.'" *Van Orden v. Perry*, 545 U.S. 677, 691(citing *Edwards v. Aguillard*, 482 U.S. 578, 583-584, 96 L. Ed. 2d 510, 107 S. Ct. 2573 (1987)). Justice Breyer also wrote, "This case, moreover, is distinguishable from instances where the Court has found Ten Commandments displays impermissible. The display is not on the grounds of a public school, where, given the impressionability of the young, government must exercise particular care in separating church and state." *Id*. at 703 (concurring) (citations omitted).

*Town of Greece* and *Marsh* cannot properly be read to apply to a public school board.

## CONCLUSION

Because the Defendant is not a legislative deliberative body as contemplated by *Marsh*, and because the Fourth Circuit has embraced the *Coles* decision, the Court should evaluate this case under the *Lemon* test and *Santa Fe* and accordingly grant summary judgment to the Plaintiffs, deny summary judgment to the Defendants, and award the relief sought in the Pleadings.

FOR THE PLAINTIFFS
CAPITOL COUNSEL, LLC:

_____
Aaron J. Kozloski, Esq., Fed. ID No.9510
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
803-465-1400 FAX 888-513-6021
aaron@capitolcounsel.us
*Attorney for the Plaintiffs*

Lexington, South Carolina
August 28, 2014